IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

COLONIAL ELECTRIC & PLUMBING
SUPPLY OF HAMMONTON, LLC,

        Plaintiff,

     v.

COLONIAL ELECTRIC SUPPLY,
LTD,

        Defendant.

CIVIL NO. 05-5408(NLH)

**OPINION**

**APPEARANCES:**

Norman E. Lehrer, Esquire
Norman E. Lehrer, P.C.
1205 North Kings Highway
Cherry Hill, NJ 08034

     *Attorney for Plaintiff*

Anthony Valenti, Esquire
Tara A. Mosier, Esquire
Cureton Caplan, P.C.
3000 Midlantic Drive
Suite 200
Mt. Laurel, NJ 08054

     *Attorneys for Defendant*

**HILLMAN**, District Judge

     This matter has come before the Court on Defendant's motion
for summary judgment on Plaintiff's trademark infringement and
unfair competition claims.  Also before the Court is Defendant's
motion to seal its papers filed in connection with the summary

judgment motion.  For the reasons expressed below, Defendant's motion to seal will be granted, but its motion for summary judgment will be denied.

**I.   BACKGROUND**

This suit was brought by Colonial Electric & Plumbing Supply of Hammonton, LLC against The Colonial Electric Supply Company, Inc. (improperly plead as Colonial Electric Supply, LTD) for infringement of the alleged trade name "Colonial Electric Supply."[1] Defendant has moved for summary judgment as to all counts of the Complaint, arguing: (1) the alleged trade name, "Colonial Electric Supply," is not arbitrary and fanciful as Plaintiff argues but rather descriptive, such that Plaintiff must establish secondary meaning to be afforded protection; (2) Plaintiff cannot establish use of the name "Colonial Electric Supply" prior in time to Defendant and thus cannot establish ownership and superior rights to Defendant; (3) Plaintiff cannot establish a likelihood of confusion; and (4) even assuming Plaintiff could establish the protectability of the mark and initial superior rights, Plaintiff abandoned use of the subject name, as evidenced by the use of its

---

[1] The Complaint alleges four counts: (1) federal unfair competition in violation of 15 U.S.C. §1125(a); (2) state service mark infringement under N.J.S.A. §56:4-1 to 2; (3) common law service mark infringement; and (4) common law unfair competition. Plaintiff requests injunctive relief; an accounting and payment of all gains, profits, and advantages derived by Defendant, and damages sustained by Plaintiff; cost of the action and reasonable attorney's fees; and other relief as this Court deems just and proper.

current name "Colonial Electric & Plumbing Supply Co., Inc.," and has therefore surrendered all rights to the mark it may have otherwise had.

Plaintiff disputes all of Defendant's arguments, and contends that summary judgment should be denied because there are genuine issues of material fact that must be decided by the fact finder.

## II.   JURISDICTION

This Court has original jurisdiction over Plaintiff's claims arising under federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.  DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.

3

In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.  Count 1 - Federal Unfair Competition**

Plaintiff claims that Defendant violated the Lanham Act, 15 U.S.C. § 1125(a), by willfully using its trade name, "Colonial Electric Supply," in the operation of its business in the same town as Plaintiff. As a primary matter, trademarks and trade names are technically distinct, although the precise difference is not often

4

material, because analogous actions for trade name infringement can be brought under the Lanham Act, 15 U.S.C. § 1125(a).[2] <u>Accuride Intern., Inc. v. Accuride Corp.</u>, 871 F.2d 1531, 1534 (9th Cir. 1989) (citations omitted).  Trade name infringement is based on considerations similar to trademark infringement, and both preclude one from using another's distinctive mark or name if it will cause a likelihood of confusion or deception as to the origin of the goods.  <u>Id.</u> (citation omitted).  Thus, the Court will apply the standard for trademark infringement to Plaintiff's trade name infringement claims.[3]

To prove infringement under the Lanham Act, a plaintiff must show: (1) that the name is valid and legally protectable; (2) that the name is owned by Plaintiff; and (3) that Defendant's use of the name to identify goods or services is likely to create confusion concerning the origin of the goods or services.  <u>Fisons Horticulture, Inc. v. Vigoro Indus., Inc.</u>, 30 F.3d 466, 472 (3d Cir. 1994) (citing <u>Ford Motor Co. v. Summit Motor Products, Inc.</u>, 930 F.2d 277, 291 (3d Cir. 1991), <u>cert. denied</u>, 502 U.S. 939 (1991)).  Each element will be addressed in turn.

_____

[2]The Lanham Act defines "trade name" as "any name used by a person to identify his or her business or vocation."  15 U.S.C. § 1127.

[3]The Court notes that the parties do not make a distinction between trademarks and trade names, and use the two terms interchangeably.

**1. Whether the trade name is valid and legally protectable**

In order to maintain a Lanham Act claim for trademark infringement, the first two requirements, validity and legal protectability, are proven where a mark has been federally registered and has become "incontestible" under the Lanham Act, 15 U.S.C. §§ 1058 and 1065. Ford Motor Co., 930 F.2d at 291 (citation omitted). Trade names, however, cannot be registered. Accuride, 871 F.2d at 1534. Thus, validity of a trade name (or a trademark which is not registered or is not incontestible) depends on proof of secondary meaning, unless the unregistered mark or trade name is inherently distinctive. Ford Motor Co., 930 F.2d at 291 (citation omitted).

Here, even though Plaintiff claims a violation of its trade name "Colonial Electric Supply," Defendant filed an application with the United States Patent and Trademark Office to register as a trademark the name "Colonial Electric Supply" with a design of a man in "Colonial" attire lighting a street lamp. Defendant's application was approved for publication, but it has not been registered due to an opposition that was filed on November 7, 2005. Plaintiff has never filed an application with the PTO for registration. Thus, because "Colonial Electric Supply" has neither been federally registered nor achieved incontestability, in order for it to be a valid and legally protectable trade name, it must be either inherently distinctive or have a secondary meaning.

6

Defendant argues that "Colonial Electric Supply" is not inherently distinctive because at least 271 New Jersey businesses incorporate the term "Colonial" in their trade name. Additionally, Defendant contends that the alleged mark is simply descriptive, and Plaintiff has not alleged any secondary meaning. As such, Defendant argues that "Colonial Electric Supply" cannot be afforded protection. Plaintiff counters that its alleged trade name is not descriptive, but rather distinctive, and accordingly, it does not need to demonstrate a secondary meaning.

To determine whether a mark is inherently distinctive, the trademark must be classified with respect to its degree of distinctiveness as: (1) generic (such as "Diet Chocolate Fudge Soda"), (2) descriptive (such as "Security Center"), (3) suggestive (such as "Coppertone"), or (4) arbitrary or fanciful (such as "Kodak").[4] Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992); Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 472 (3d Cir. 2005); Vision Center v. Opticks, Inc., 596 F.2d 111, 115 (5th Cir. 1979) (citing Miller Brewing Co. v. G. Heilman Brewing Co., 561 F.2d 75, 79 (7th Cir. 1977), cert. denied, 434 U.S. 1025 (1978)). A generic mark "refer[s] to the genus of which the particular product is a species" and may not be registered as a

_____

[4]Although the categories are meant to be mutually exclusive, they may be difficult to define because "they are spectrum-like and tend to merge imperceptibly from one to another." Vision Center, 596 F.2d at 115 (citing Miller Brewing Co., 561 F.2d at 79).

trademark.  Two Pesos, 505 U.S. at 768.  A descriptive mark does not identify a particular source and is thus deemed distinctive only if it "has become distinctive of the applicant's goods in commerce."  Two Pesos, 505 U.S. at 768.

In contrast, a suggestive, arbitrary, or fanciful mark is deemed inherently distinctive, because it identifies a particular source of a product.  Two Pesos, 505 U.S. at 768.  "A suggestive term suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as descriptive[, whereas] an arbitrary or fanciful term bears no relationship to the product or service."  Vision Center, 596 F.2d at 115.  A "dictionary definition of the word is an appropriate and relevant indication of the ordinary significance and meaning of words to the public."  Id. (citing American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 11 (5th Cir. 1974)).

Here, "Colonial Electric Supply" consists of three words.  The word "electric" is defined as "of, relating to, producing, or operated by electricity," which in turn is defined as "the science dealing with electric charges and currents."[5]  The word "supply" is defined as "furnishing or providing."  Used in combination, the words "electric supply," therefore, refer to the furnishing or

_____

[5]These dictionary definitions are found at dictionary.com.

8

providing of products related to, producing, or operated by electricity.  Thus, based on these dictionary definitions, it is clear that "electric supply" is simply a descriptive term.[6]  See Vision Center, 596 F.2d at 116 (holding that "Vision Center" is descriptive because "[w]henever a word or phrase naturally directs attention to the qualities, characteristics, effect, or purpose of the product or service, it is descriptive and cannot be claimed as an exclusive trade name").

Even though "electric supply" is descriptive, the next question is the effect of the addition of the term "Colonial" to that descriptive term.  Defendant argues that "Colonial Electric Supply" is also descriptive, and that the addition of the word "Colonial" does not change the classification of the mark.  Defendant argues that the wide use of the term "Colonial" displays the characteristics of the products or service--that is, "Colonial," with the image of patriotism, tradition, or deeply-rooted origins, is intended to convey that same image about electrical supplies.  Plaintiff disputes Defendant's argument, contending that "Colonial" does not describe the electric supplies it sells, and it does not suggest a quality of the goods.  Rather, Plaintiff argues that "Colonial" is an arbitrary, distinctive mark.

---

[6]As stated below, the characterization of a trade name-- whether it is generic, descriptive, suggestive, or arbitrary or fanciful--is a factual issue.  However, as also discussed below, see note 15, no reasonable minds could differ as to the descriptive nature of "electric supply."

Plaintiff supports its position by referring to Defendant's PTO trademark proceedings.  During the prosecution of Defendant's application, the trademark examiner filed an "Examiner's Amendment," in which the examiner clarified, "No claim is made to the exclusive right to use 'ELECTRIC SUPPLY' apart from the mark as shown."  (Pl.'s Ex. L.)  The examiner cited to 15 U.S.C. § 1056, which provides that the applicant may be required to "disclaim an unregistrable component of a mark otherwise registrable." Plaintiff points out that the examiner did not require Defendant to disclaim the term "Colonial."  Plaintiff argues that the Examiner's Amendment, which Defendant agreed to, evidences that Defendant acknowledges that "electric supply" is descriptive, or otherwise not protectable, and that "Colonial" is not descriptive and is protectable.  In any event, Plaintiff contends that this raises an issue of fact that requires the denial of Defendant's motion for summary judgment.

Plaintiff's position is persuasive.  Defendant argues that "Colonial Electric Supply" is descriptive as a whole, and, because Plaintiff has not alleged any secondary meaning, it is not a valid, protectable trade name.  At the same time, however, Defendant has filed a trademark application for the very mark that it now claims is not valid.  Even though Defendant's proposed trademark also includes an image, and the trademark has not been registered, the fact that Defendant has sought trademark protection for "Colonial

10

Electric Supply" inherently acknowledges that Defendant also believes that the mark is valid and protectable.  Furthermore, the fact that the trademark examiner only required Defendant to disclaim the "electrical supply" portion of the literal element of its trademark presents a disputed issue with regard to the effect of the addition of the word "Colonial" on the characterization of "Colonial Electric Supply."  Consequently, because the characterization of a mark is a factual issue, see Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 292 n.18 (3d Cir. 1991) (citation omitted), summary judgment must be denied.[7]

### 2.  Whether the name is owned by Plaintiff

Even if it is determined that "Colonial Electric Supply" is a valid and protectable trade name, to prevail on its unfair competition claim, Plaintiff must still prove that it owns the name.  In determining ownership of a trademark/trade name, a court considers (1) priority of use and (2) sufficient market penetration.  See Lucent Information Management, Inc. v. Lucent

---

[7]The issue of whether "Colonial Electric Supply" has a secondary meaning may only be addressed if a fact finder determines that "Colonial Electric Supply" is descriptive, and not inherently distinctive.

Additionally, Defendant points out that the claims in Plaintiff's Complaint are based on Defendant's use of "Colonial Electric Supply," but in its opposition brief, Plaintiff has now claimed that Defendant has violated Plaintiff's trade name of "Colonial Electric" as well as "Colonial Electric Supply."  This issue will be addressed below.

Technologies, Inc., 186 F.3d 311, 316-17 (3d Cir. 1999); Natural
Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1394, 1397
(3d Cir. 1985).

### (1) *Priority of use*

With regard to priority of use, Defendant argues that
Plaintiff does not own the trademark because: Plaintiff's alleged
rights are based upon invalid assignment in gross; Plaintiff's
alleged rights are based upon invalid tacking; and even assuming
Plaintiff acquired rights through predecessors, Defendant's rights
are superior based on Defendant's own predecessor chain.

Defendant, The Colonial Electric Supply Company, Inc., was
formed in 1972 and Plaintiff, Colonial Electric & Plumbing Supply
of Hammonton, LLC, was formed in 2003.  Plaintiff claims, however,
that its three predecessors-in-interest date back to the late
1940s, and as such, its use of "Colonial Electric Supply" and/or
"Colonial Electric" predates Defendant's use.[8]  Furthermore,
Plaintiff claims that it has provided sufficient evidence to
withstand summary judgment on the issue of whether the assignment
of the trade name is invalid.

A trademark may be transferred or assigned only with the

---

[8]See note 7 with regard to Plaintiff's claims regarding
"Colonial Electric Supply" and/or "Colonial Electric."

transfer of the goodwill[9] of a business, because a trademark has no significance independent of that goodwill.  Premier Dental Products Co. v. Darby Supply Co., 794 F.2d 850, 853 (3d Cir. 1986); Interstate Net Bank v. NetB@nk, Inc., 348 F. Supp. 2d 340, 348 (D.N.J. 2004).  A purported assignment of a trademark without goodwill is an invalid "assignment in gross."[10]  Net Bank, 348 F. Supp. 2d at 348 (citing Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999)).

    "The transfer of a trade name to a subsequent entity is presumed in the absence of evidence to the contrary."  Mid-List Press v. Nora, 275 F. Supp. 2d 997, 1002 (D. Minn. 2003), aff'd, 374 F.3d 690 (8th Cir. 2004).  Formal assignments of trade names are not required, because "the law presumes that when a business is conveyed, its trade name and goodwill are also conveyed."  American Sleek Craft, Inc. v. Nescher, 131 B.R. 991, 996, 997 (D. Ariz. 1991).  If a writing is lacking, an assignment may be proven in

---

    [9]"'Goodwill' is the advantage obtained from use of a trademark.  This includes public confidence in the quality of the product and in the warranties made on behalf of the product, and the 'name recognition' of the product by the public that differentiates that product from others."  Premier Dental Products Co. v. Darby Dental Supply Co., 794 F.2d 850, 853 n.3 (3d Cir. 1986).

    [10]The prohibition against assignments in gross is intended to protect consumers: "Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another."  Net Bank, 348 F. Supp. 2d at 349 (citing Marshak v. Green, 746 F.2d 927, 929 (2d Cir. 1984)).

other ways.  <u>Doebler</u>, 442 F.3d at 822.  "If there is no documentary evidence of an assignment, it may be proven by the clear and uncontradicted oral testimony of a person in a position to have actual knowledge."  <u>Id.</u>  Courts, however, "must be cautious in scenarios that do not involve clear written documents of assignment."  <u>Id.</u>  "Requiring strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentive to identify expressly the ownership of the marks they employ."  <u>Id.</u> (quoting <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 884 (7th Cir. 1997)).

"[A]lthough transfer of physical or tangible assets is not required, an assignment without the transfer of physical assets will only be upheld where the assignee 'is producing a product or providing a service which is substantially similar to that of the assignor and where consumers will not be deceived or harmed.'"  <u>Net Bank</u>, 348 F. Supp. 2d at 349 (quoting <u>Pilates, Inc. v. Current Concepts, Inc.</u>, 120 F. Supp. 2d 286, 311 (S.D.N.Y. 2000)).  The mere fact that an agreement purports to assign goodwill along with the trademark is insufficient; courts must look to the "reality of the transaction" to determine if goodwill has been transferred. <u>Net Bank</u>, 348 F. Supp. 2d at 349.  After a proper assignment, "the assignee steps into the shoes of the assignor."  <u>Premier Dental Products</u>, 794 F.2d at 853.

14

Plaintiff's predecessor chain is as follows: (1) Colonial Electric Company to Hammonton Colonial Electric Supply, Inc.; (2) Hammonton Colonial Electric Supply, Inc. to Colonial Electric & Plumbing Supply Co., Inc.; and (3) Colonial Electric & Plumbing Supply Co., Inc. to Colonial Electric & Plumbing Supply of Hammonton, LLC.  Plaintiff claims that all entities used "Colonial Electric Supply" or "Colonial Electric" as their trade name.

According to Plaintiff,[11] the Colonial Electric Company was established in the late 1940s and was located at 111 12th Street in Hammonton, New Jersey.[12]  The business was owned by John Cavuto. Cavuto's nephew, Louis Valenti, Jr., visited the store in the 1950s, and in 1962, his father, along with two other family members, purchased the business from Cavuto.  During the 1960s, Valenti helped out in the store, and recalls that the business sold appliances and electrical supplies.  By 1973, Valenti and his father had bought out their other family members' shares of the business, and continued to operate the same business, selling the same goods, at the same location.

---

[11]To prove the genesis and evolution of the "Colonial Electric" business, Plaintiff has submitted affidavits of Michael Lawrow, the current owner, and Louis Valenti, Jr., the most recent previous owner.

[12]Even though Lawrow admits that he is not certain of the exact date Colonial Electric Company was established, Plaintiff has provided copies of the Colonial Electric Company's cancelled checks dated March 1949.  (Pl.'s Ex. A to Lawrow Aff.)

In 1989, Valenti's father passed away, and Valenti continued to operate the same business.  Around 1996 or 1997, Valenti discontinued selling appliances, and in 1998, Valenti sold the entire business, "including the inventory and all of the good will," to Michael Lawrow.  (Valenti Aff. ¶ 11.)  According to Valenti, throughout the entire time that the Valenti family and their relatives operated the store at 111 12th Street, they used the trade name "Colonial Electric" to conduct their business.

When Lawrow purchased the business, he claims that he purchased "the business as a going concern"--i.e., "all of the existing inventory, trade name, goodwill, customer lists and the like."  (Lawrow Aff. ¶ 6.)  Even though Lawrow incorporated his business as Colonial Electric & Plumbing Supply Co, Inc.--the "plumbing" added to reflect the addition of plumbing supplies for sale--Lawrow continued to operate the business, including the sale of the same electrical supplies and the use of the trade name "Colonial Electric," just as Valenti had.

In June 2000, because he needed more space, Lawrow relocated the business in Hammonton from 111 12th Street to 310 South Egg Harbor Road.  Lawrow maintains that the business remained the same as before, selling the same electrical supplies to the same customers with the telephone number.  The sign painted at the new location prominently displayed "Colonial Electric" in larger letters than "Plumbing Supply Co."  (Lawrow Aff., Ex. C.)  Lawrow

16

states that his limited advertising has also emphasized "Colonial Electric."   (Id., Ex. E.)

In January 2003, Lawrow was advised that he "would be better off operating the business as a limited liability company," so he formed Colonial Electric & Plumbing Supply of Hammonton, LLC. However, Lawrow maintains that he has continued to operate the business as "Colonial Electric" just as the Cavuto and Valenti families had since the 1940s:  he and his employees answer the phone by saying "Colonial Electric"; the 2002-2003 Hammonton phone directory identified the business as "Colonial Electric"; numerous documents from the State of New Jersey, City of Hammonton, and others refer to the business as "Colonial Electric" or "Colonial Electric Supply"; suppliers refer to the business as "Colonial Electric" or "Colonial Electric Supply"; and customers refer to the business as "Colonial Electric" or "Colonial Electric Supply." (Lawrow Aff., Exs. H-Z.)

Based on all this evidence, Plaintiff argues that even though there were never any formal assignments of the name "Colonial Electric" or "Colonial Electric Supply," at a minimum, summary judgment should be denied because Plaintiff has presented a genuine issue of material fact as to Plaintiff's prior use of "Colonial Electric" or "Colonial Electric Supply."

Defendant counters, however, that Plaintiff's evidence of assignment is simply improper self-serving testimony.  Defendant

also argues that Plaintiff has not demonstrated that the goods and services of its predecessors are substantially similar to each other to allow the assignment of the trade name. Correspondingly, Defendant contends that the sale of electrical supplies is not a natural field of expansion from household appliances, and that the changing names of the businesses prove that the businesses did not carry on the previous enterprise. Finally, Defendant argues that even if Plaintiff had acquired any rights, it abandoned them by using different names.

With regard to Defendant's argument that Plaintiff's alleged trade name is a result of an invalid assignment, Plaintiff has provided sufficient evidence to survive summary judgment. To demonstrate the assignment of Plaintiff's alleged trade name, Plaintiff has provided numerous documents, and has proffered testimony from non-parties, such as Valenti, evidencing that the businesses have used the trade name "Colonial Electric" or "Colonial Electric Supply" since the late 1940s. Plaintiff has also submitted documents and proffered testimony with regard to the goods and services the businesses have sold over the years.

In arguing that this evidence is insufficient to survive summary judgment, Defendant characterizes the testimony of Valenti as "vague" and concludes that there "is a significant difference between traditional electrical materials . . . which Defendant currently sells . . ., and electrical supplies that would accompany

18

the set up of the household appliances sold by Plaintiff's alleged
predecessor, Colonial Electric Company."  (Def. Reply at 3.)
Defendant further refutes Plaintiff's evidence with regard to
continuity of goods and services by stating that televisions,
ranges, and electrical repairs referenced in a 1950 Hammonton
Telephone Directory listing for the business "are obviously not
electrical supplies in the sense of what Plaintiff sells today or
Louis Valenti would have simply said so."  (Id. at 3 n.1.)

In considering a motion for summary judgment, however, the
Court is not permitted to make credibility determinations as to the
proffered testimony, and it cannot engage in any weighing of the
evidence.  It is up to the factfinder to determine the validity of
the prior use of the trade name by considering the credibility of
the testimony of Valenti and other witnesses, and by analyzing the
evidence with regard to whether the goods and services of the
businesses are substantially similar, or constitute a natural field
expansion.  The Court cannot conclude as a matter of law that
Valenti's teen memories are too vague to prove prior use,[13] or that
"televisions, ranges, and electrical repairs" are not similar

---

[13]As the Third Circuit found in concluding that an issue of
fact existed as to whether a competitor's predecessor had
abandoned or assigned its mark, "The plaintiff's reliance on the
possibly self-serving testimony of one of its principals
regarding events occurring more than 30 years ago creates
important questions for the fact-finder regarding [the
principal's] credibility, and is simply insufficient to prove a
trademark assignment as a matter of law."  Doebler, 442 F.3d at
822.

19

enough to, or not a natural field of expansion from, Plaintiff's present business.  Considering that Plaintiff is the non-moving party, and its evidence is to be believed and all justifiable inferences are to be drawn in its favor, Plaintiff has demonstrated that a genuine issue of material fact exists as to the assignment of its alleged trade name.

This conclusion, however, relies upon the assumption that the trade name "Colonial Electric" is interchangeable with "Colonial Electric Supply."  In its Complaint, Plaintiff alleges the violation of the trade name "Colonial Electric Supply," while in Plaintiff's brief and supporting proofs, Plaintiff maintains that its trade name "Colonial Electric Supply" and/or "Colonial Electric" has been violated.  Thus, the issue becomes whether "Colonial Electric Supply" and "Colonial Electric" are two different trade names, or whether they can be considered the same trade name.

As a primary matter, Defendant argues that the changing names of the businesses--Colonial Electric Company to Hammonton Colonial Electric Supply, Inc. to Colonial Electric & Plumbing Supply Co. to Colonial Electric & Plumbing Supply of Hammonton, LLC--evidences invalid tacking.  Tacking is the "ability of a trademark owner to claim priority in a mark based on the first use date of a similar, but technically distinct, mark--but only in the exceptionally narrow instance where the previously used mark is the legal

20

equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark." Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047-48 (9th Cir. 1999) (quoting Data Concepts, Inc. v. Digital Consulting, Inc., 150 F.3d 620, 623 (6th Cir. 1998) (quoting Van Dyne-Crotty, Inc. v. Wear-Guard Corp., 926 F.2d 1156, 1159 (Fed. Cir. 1991)) (internal quotations omitted).  The standard for tacking is exceedingly strict.  Id. at 1048.  For example, in Van Dyne-Crotty, the Federal Circuit concluded that priority in "CLOTHES THAT WORK. FOR THE WORK YOU DO" could not be tacked onto "CLOTHES THAT WORK."  Van Dyne-Crotty, 926 F.2d at 1160 (holding that the shorter phrase was not the legal equivalent of the longer mark).

Based on this tacking standard, Defendant argues that the changing names of Colonial Electric Company to Hammonton Colonial Electric Supply, Inc. to Colonial Electric & Plumbing Supply Co. to Colonial Electric & Plumbing Supply of Hammonton, LLC are invalid. The issue here, however, is not the addition and subtraction of the words "Hammonton" and "plumbing" to the four corporate names under which the business has been operated over the years.  Plaintiff does not deny that the corporate names have changed.  Rather, the issue is whether Defendant has violated Plaintiff's alleged trade name "Colonial Electric" and/or "Colonial Electric Supply," which has been allegedly used since the 1940s, and which has been

21

allegedly assigned to Plaintiff along with the business and goodwill.  Because Plaintiff asserts that all the entities have used the same trade name, the issue of invalid tacking is only relevant to the use or non-use of the word "supply."[14]

A mark can be changed without abandonment or loss of priority if it is done in such a way that "the continuing common element of the mark retains its impact and symbolizes a continuing commercial impression."  3 McCarthy on Trademarks and Unfair Competition § 17:26 (4th ed.) (citing Hess's of Allentown, Inc. v. National Bellas Hess, Inc., 169 U.S.P.Q. 673 (T.T.A.B. 1971)).  The application of this test is strict, with the Federal Circuit stating that tacking is only "occasionally permitted" in the "rare instances" where the old and new formats are "legal equivalents." Id. (citing Van Dyne-Crotty, 926 F.2d at 1160).

For example, in American Sec. Bank v. American Sec. & Trust Co., 571 F.2d 564 (Cust. & Pat. App. 1978), the trademark applicant, American Security Trust Company, first used the trade name "AMERICAN SECURITY" for banking services in 1900, and in 1935, the opposer commenced the use of "AMERICAN SECURITY BANK" as its corporate name.  In 1973, the applicant commenced the use of the

_____

[14]Defendant also argues that Plaintiff abandoned the use of its alleged trade name.  Because the "effect of abandonment is essentially the same as the effect of improper tacking," see Iowa Health Systems v. Trinity Health Corp., 177 F. Supp. 2d 897, 920 (N.D. Iowa 2001), the Court will not undertake a separate analysis of Defendant's abandonment argument.

trade name "AMERICAN SECURITY BANK," adding the word "bank" to its previous trade name.  American Security Bank, 571 F.2d at 566. Opposer operated out of Honolulu and applicant operated out of Washington, D.C.  Id.  The court affirmed the Trademark Trial and Appeal Board's (TTAB) ruling that the applicant possessed superior rights because it had used "'AMERICAN SECURITY' long prior to opposer's first use of its name and that the addition of the purely descriptive term 'BANK' to its long-used mark has [not] in any way altered the trademark significance thereof.'"  Id.  The court took this "to be one way of saying that AMERICAN SECURITY and AMERICAN SECURITY BANK are legal equivalents for the purposes of this case, taking into consideration the fact that both are used for banking services."  Id.

In confirming that AMERICAN SECURITY and AMERICAN SECURITY BANK are legally equivalent, the court explained,

> AMERICAN SECURITY is a two-word mark which appears to
> have originated as the familiar name or nickname of
> American Security and Trust Company which, though a bank,
> did not use the term "bank" in its name, so far as the
> record before us shows.  While AMERICAN SECURITY BANK is
> a distinguishable, three-word mark, the word "bank" is
> purely descriptive and adds nothing to the origin-
> indicating significance of AMERICAN SECURITY.  Customers
> using the services would know they were dealing with a
> bank.

Id.  The court further explained,

> The situation here is not one where, . . . the applicant,
> as a latecomer, adopted a mark used for thirty-eight
> years by another as its name; [the applicant] merely

23

added the descriptive word BANK to a mark it had been
using for seventy-three years for banking services. Its
customers throughout that period always knew that the
institution going by the nickname of or using the service
mark AMERICAN SECURITY was a bank.

Id. at 568.

The court also noted that "as of this writing[,] the
metropolitan Washington telephone directories list AMERICAN
SECURITY BANK at 15th St. and Pennsylvania Avenue and at many
branch locations and do not list American Security and Trust
Company. In deciding this case we are bound by the record before us
which contains nothing to show that [the applicant's] name is or
ever has been anything other than American Security and Trust
Company." Id. at 567 n.1.

In contrast, the TTAB did not find AMERICAN MOBILPHONE and
design and AMERICAN MOBILPHONE PAGING and design to be legal
equivalents. American Paging Inc. v. American Mobilphone Inc., 13
U.S.P.Q.2d 2036, 1989 WL 274416 (T.T.A.B. 1989). The TTAB
distinguished the American Security case by explaining,

[R]egistrant herein does not provide one type of service,
but rather two types: mobile phone services and radio
paging services. Customers who simply saw the mark
AMERICAN MOBILPHONE and design and who simply utilized
registrant's mobile phone services, would not know they
were dealing with a company that also rendered paging
services. In short, the mark AMERICAN MOBILPHONE PAGING
and design conveys more information to potential
customers than does the mark AMERICAN MOBILPHONE and
design. Thus, when registrant advertised in the 1987
Birmingham Yellow Pages under "Paging & Signaling
Equipment & Systems," it did not use simply the mark

24

AMERICAN MOBILPHONE and design, taking for granted that consumers would automatically recognize that registrant is also a paging company. Rather, registrant--when it advertised under the "Paging & Signaling Equipment & Systems" category--used a different and more informative mark, namely, AMERICAN MOBILPHONE PAGING and design. In short, the marks AMERICAN MOBILPHONE and design and AMERICAN MOBILPHONE PAGING and design create different commercial impressions and hence are not legally identical.

American Paging Inc., 1989 WL 274416 at *3.

Here, "Colonial Electric Supply" and "Colonial Electric" are legal equivalents. Like the word "bank" in the American Security case, "supply" is purely descriptive, as acknowledged by Defendant in its trademark application and argued in their brief.[15]

---

[15]   There is a dispute among the circuits as to whether tacking is an issue of law or fact. The Federal Circuit and the Sixth Circuit have determined that it is an issue of law, while the Ninth Circuit has determined that it is an issue of fact. See Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 759 (9th Cir. 2006) (discussing Van Dyne-Crotty, Inc. v. Wear-Guard Corp., 926 F.2d 1156, 1159 (Fed. Cir. 1991); Data Concepts, Inc. v. Digital Consulting, Inc., 150 F.3d 620, 623 (6th Cir.1998)). The Federal and Sixth Circuits came to their conclusion because they consider the likelihood of confusion issue, which is an analogous consideration, as a matter of law. Conversely, because the Ninth Circuit considers the likelihood of confusion issue as a matter of fact, it considers the tacking issue to be a matter of fact. Id. It does not appear that the Third Circuit has definitively addressed either issue.

Even under the Ninth Circuit's standard, however, the court noted that a question of fact may be resolved as a matter of law if reasonable minds cannot differ and the evidence permits only one conclusion. Id. (citation omitted). Here, although the characterization of mark is a question of fact, and, consequently, the characterization of "supply" is an issue of fact, reasonable minds cannot differ that "supply" is descriptive. See note 6. Correspondingly, regardless of whether tacking is an issue of law or fact, no reasonable minds can

Additionally, also similar to American Security, Plaintiff has provided evidence that suppliers, customers, the phone book, the state, the township, and other entities have referred to Plaintiff as both "Colonial Electric" and "Colonial Electric Supply," knowing that it was contacting Plaintiff's business.  Further, in contrast to the American Mobilephone case, "Colonial Electric" and "Colonial Electric Supply" do not provide two different services--both "supply" electrical goods.  It is also undisputed that "Colonial Electric" has been used in all of the predecessor's official business names.  Accordingly, both trade names symbolize a continuing commercial impression of Plaintiffs' business.

The problem, however, as argued by Defendant, is that Plaintiff's Complaint only alleges the violation of "Colonial Electric Supply" and not "Colonial Electric."  Plaintiff explains that the parties narrowed the issues in two status conferences before the magistrate judge, and that although the Complaint has not been formally amended, Plaintiff "has made it clear that it was the opening of Defendant's stores in southern New Jersey under the name COLONIAL ELECTRIC which has caused confusion and for which Plaintiff seeks injunctive relief."  (Pl.'s Br. at 6-7.)

The Court's holding that "Colonial Electric" and "Colonial Electric Supply" are legal equivalents essentially makes the two

---

differ that "Colonial Electric Supply" is the equivalent of "Colonial Electric."

names interchangeable.  Thus, even though Plaintiff does not
specifically claim the violation of "Colonial Electric," and it has
not moved to amend its Complaint to add that claim, by virtue of
claiming the violation of "Colonial Electric Supply," Plaintiff, in
practical effect, has made the claim that Defendant's use of
"Colonial Electric" and/or "Colonial Electric Supply" violates the
Lanham Act.  Consequently, Plaintiff has demonstrated that a
genuine issue of material fact exists as to the assignment of its
alleged trade name "Colonial Electric" and/or "Colonial Electric
Supply."

### (2)  *Market penetration*

The second element in determining ownership of a trade name is
whether the name has sufficient market penetration.  Because it is
the trade, rather than the mark or name itself, that is to be
protected, ownership extends only to areas where the market
penetration of the name is sufficient to pose a likelihood of
confusion among the consumers in that area.  <u>Lucent</u>, 186 F.3d at
316-17; <u>Footwear</u>, 760 F.2d at 1397.  Four factors are considered in
determining whether the market penetration of a trademark in an
area is sufficient to warrant protection: (1) the volume of sales
of the trademarked product; (2) the positive and negative growth
trends in the area; (3) the ratio of the number of actual customers
to the potential number of customers; and (4) the amount of product
advertising in the area.  <u>Lucent</u>, 186 F.3d at 317 (quoting

27

Footwear, 760 F.2d at 1398-99).

The parties discuss the market penetration issue in the context of the third element of determining infringement under the Lanham Act--i.e., whether Defendant's use of the trade name is likely to cause confusion.  The likelihood of confusion issue, however, cannot be resolved prior to determining the ownership of the mark.  See Lucent, 186 F.3d at 316.  Consequently, because summary judgment is denied on the issue of ownership, it must also be denied on the issue of confusion and market penetration.

### 4.   Whether Defendant's rights are superior based on Defendant's own predecessor chain

Defendant also argues that even if Plaintiff can establish a valid assignment, its prior use does not predate Defendant's use. According to the current president of Defendant, Steven P. Bellwoar, "Defendant's predecessor commenced operations prior to 1920 under the trade name Colonial Electric Company."  (Bellwoar Aff. ¶ 8.)  Defendant, however, does not provide any other evidence to support this contention.

The same arguments Defendant makes to challenge Plaintiff's predecessor chain can also be levied against Defendant.  Defendant complains that Plaintiff has only provided "self-serving" testimony to prove that the trade name "Colonial Electric" was used since the late 1940s, but to support its contention that Defendant's predecessor has been in existence since before 1920, Defendant has

28

provided the exact same type of proof.  Indeed, using Defendant's own description of Plaintiff's proffered testimony, Defendant's proof is even more "self-serving" in the sense that Plaintiff's witness does not have a stake in this action, while Defendant's witness is the defendant company's current president.

Nevertheless, Plaintiff disputes Defendant's contention, arguing that the evidence on the record proves that Defendant was established in 1972.  To support its argument, Plaintiff argues that not only does Bellwoar have no personal knowledge of the company's origins, the original Colonial Electric closed in 1971, and there is no evidence to prove that Bellwoar purchased an ongoing business.  Additionally, Plaintiff argues that Defendant's representation to the PTO in its trademark application states that its first date of use was January 1, 1972.[16]

Despite the fact that in filing a motion for summary judgment, Defendant has the burden of establishing the absence of issues of material fact, Defendant's argument that it predates Plaintiff actually raises an issue of material fact.  Therefore, just as

---

[16]Plaintiff also argues that Bellwoar's Affidavit should be stricken because any statements regarding events prior to 1980, when Bellwoar became affiliated with the business, are not based on personal knowledge.  Plaintiff also argues that the affidavit should be stricken because some of its contents include facts that were not part of the Rule 26 disclosures, and actually contradict Defendant's Rule 26 disclosures.  As stated above, Defendant's submission of the Bellwoar affidavit creates an issue of fact with regard to Defendant's predecessor chain, and, therefore, defeats its own motion for summary judgment on that issue.  Because this issue cannot be resolved at summary judgment, Plaintiff has other avenues by which to dispute the evidentiary value and admissibility of this affidavit.

there is a disputed issue as to Plaintiff's predecessor chain, there is also a disputed issue as to Defendant's predecessor chain, and summary judgment must be denied.

### C.  Other Counts

Plaintiff and Defendant agree that Plaintiff's remaining statutory and common law claims are reflective of federal law, and should therefore "stand of fall together."

## IV.  CONCLUSION

For the reasons expressed above, Defendant's motion for summary judgment is denied.  With regard to Defendant's motion to seal, Defendant has filed under seal its motion for summary judgment and its supporting documents pursuant to a confidentiality order agreed to by the parties and signed by this Court.  (See Docket No. 13.)  Because the Court has already granted permission to the parties to file their documents under seal, Defendant's motion to seal is granted.


Dated:    December 27, 2007              s/ Noel L. Hillman
                                        _____

At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.